# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA OCALA DIVISION

WILLIAM SCHMIDT,
individually

    Plaintiff,

vs.

CASE NO:

VELEZ ENTERPRISES, LLC, a Delaware limited liability company, and JOSE JAIME VELEZ, individually

    Defendants.

_____/

## COMPLAINT

Plaintiff, William Schmidt, ("Schmidt") hereby files this Complaint against the Defendants, Velez Enterprises, LLC, d/b/a Operations and Quality Systems Improvement Experts, ("OQSIE"), and Jose Jaime Velez ("Velez") (collectively the "Defendants"), and states as follows:

### PARTIES

1. Schmidt is a resident of Clermont, Florida and a citizen of Florida.

2. OQSIE is a Delaware limited liability company with a principal place of business in California.

3. OQSIE conducts business in the State of Florida and has maintained a business division office in Florida.

4. Velez is a California citizen.

5. Velez is currently the sole member of OQSIE.

## JURISDICTION AND VENUE

6. There is complete diversity amongst the parties and the amount-in-controversy exceeds $75,000, exclusive of interest and costs. Thus, this Court has jurisdiction of this matter pursuant to Section 28 U.S.C. § 1332(a)(1).

7. This Court has personal jurisdiction over Velez and OQSIE pursuant to Florida Statutes § 48.193.

8. Payment to Schmidt pursuant to the Retirement Agreement (as defined herein) is due to Schmidt in Clermont, Florida.

9. Velez has failed and refused to make the payments he owes to Schmidt in Clermont, Florida.

10. Payment to Schmidt pursuant to the Collaboration Agreement (as defined herein) is due to Schmidt in Clermont, Florida.

11. OQSIE has failed and refused to make the payments it owes to Schmidt in Clermont, Florida.

## FACTUAL BACKGROUND

12. Schmidt and Velez formed OQSIE in 2013.

13. At the time of formation, Velez owned 51% percent of OQSIE and Schmidt owned 49%.

14. On June 13, 2013, Schmidt and Velez executed the Operating Agreement for Velez Enterprises, LLC (the "Operating Agreement"). A true and correct copy of the Operating Agreement is attached hereto as **Exhibit A**.

15. OQSIE is a consulting company focused on regulatory compliance, inventory and customer service optimization, and cost reduction in life science related industries.

16. On March 2, 2017, Schmidt and Velez executed Addendum #1 to the Operating Agreement (the "First Addendum"). The First Addendum is attached hereto as **Exhibit B**.

17. In 2017, OQSIE established a defined benefit retirement plan for Velez and Schmidt (the "Cash Balance Plan").

18. The Cash Balance Plan requires regular annual payments in order to ensure funding for the defined retirement benefits and to avoid penalties for failure to properly fund the Cash Balance Plan.

19. In early 2020 Schmidt sought to retire from his day-to-day work with OQSIE and began speaking with Velez about retiring.

20. Though he wished to retire from day-to-day operations, Schmidt desired to continue to be associated with OQSIE after this retirement and help the company he built with Velez prosper even after this retirement.

21. In order to effectuate Schmidt's retirement from OQSIE Schmidt and Velez entered into that certain William Schmidt Retirement Agreement on May 21, 2020 (the "Retirement Agreement"). A true and correct copy of the Retirement Agreement is attached hereto as **Exhibit C**.

22. Because Schmidt desired to continue working with and supporting OQSIE, Schmidt and OQSIE entered into that certain Operations & Quality Systems

Improvement Experts Associate Partner Collaboration Agreement (the "Collaboration Agreement") on May 21, 2020 as part of the Retirement Agreement. A true and correct copy of the Collaboration Agreement is attached hereto as **Exhibit D**.

23. On June 15, 2020, Schmidt and Velez executed that certain Amendment #2 to the Operating Agreement (the "Second Addendum"). A true and correct copy of the Second Addendum is attached hereto as **Exhibit E**.

24. Pursuant to the Retirement Agreement, Schmidt immediately turned over his ownership interest in OQSIE to Velez in exchange for a series of promises made by Velez.

25. Central to those promises, Velez agreed to pay Schmidt two-million, two-hundred thousand dollars ($2,200,000.00) for the purchase of Schmidt's ownership interest in OQSIE (the "Purchase Price"), according to the terms and conditions set forth in the Retirement Agreement.

26. The Retirement Agreement provides a mechanism to either increase or decrease the Purchase Price, with any potential decrease capped at two-hundred thousand dollars ($200,000.00).

27. Velez further agreed to ensure that Schmidt was removed as a guarantor on that certain Revolving Term Note between TD Bank, N.A. ("TD Bank") and OQSIE dated March 12, 2018 (the "TD Bank Note").

28. Schmidt is listed as a guarantor to the TD Bank Note pursuant to that certain Unlimited Guaranty between Schmidt and TD Bank dated March 9, 2018 (the

"Schmidt Guaranty").

29. To date, Velez has not had TD Bank remove Schmidt as a guarantor of the TD Bank Note.

30. Pursuant to the Collaboration Agreement, OQSIE is required to pay Schmidt for business that he generates for OQSIE.

31. Schmidt has generated significant business for OQSIE since the date of the execution of the Collaboration Agreement.

32. This work was generated both in the second half of 2020 and the first half of 2021.

33. OQSIE owes Schmidt at least $95,000.00 in relation to projects Schmidt generated in 2020.

34. Because the compensation owed to Schmidt by OQSIE is calculated based on OQSIE's gross margin on the projects generated by Schmidt, it is impossible for Schmidt to precisely calculate the sums he is owed under the Collaboration Agreement without review of OQSIE's books and records.

35. When the measure of gross margin obtained by OQSIE on the projects generated by Schmidt is determined through discovery, Schmidt will be entitled to fifty percent (50%) thereof for work performed in 2020 and twenty-five percent (25%) thereof for work performed in 2021.

36. Both Velez and OQSIE have failed and refused to properly fund the Cash Balance Plan.

37. OQSIE and Velez's failure to properly fund the Cash Balance Plan has

forced Schmidt to lend money to OQSIE that it can make timely and complete contributions to the Cash Balance Plan to avoid penalties related to the funding thereof.

38. To date, Schmidt has loaned OQSIE $130,271.19 to ensure timely and complete contributions are made to the Cash Balance Plan, which sums have not been repaid.

39. Despite Schmidt's loan to OQSIE, the Cash Balance Plan has been underfunded for two years, causing losses for Schmidt.

40. While Schmidt was an owner of OQSIE it was a project-driven business that had no employees and retained the appropriate consultants for each project on an independent contractor basis.

41. Running OQSIE in that manner permitted OQSIE to adapt quickly and effectively to client needs and run in a profitable manner.

42. Running OQSIE in that manner also made OQSIE an attractive acquisition target for potential investors because of its limited fixed costs.

43. Since Schmidt retired from OQSIE, Velez has gone on a hiring spree and placed numerous members of his family on the OQSIE payroll.

44. On information and belief, the family members Velez has hired to OQSIE lack the requisite knowledge and experience in the industry in which OQSIE operates to be effective employees worth the compensation they are receiving.

45. On information and belief, Velez hired these family members at OQSIE to deplete OQSIE's assets and transfer its profitability to his family members to avoid paying Schmidt.

## COUNT I
## BREACH OF THE RETIREMENT AGREEMENT
### *Against Velez*

46. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 45 above as if herein fully set forth.

47. The Retirement Agreement is a valid and binding contract.

48. Velez breached the Retirement Agreement by failing to pay Schmidt as required therein.

49. In addition, Velez breached the Retirement Agreement by failing to remove Schmidt as a guarantor of the TD Bank Note.

50. Schmidt has suffered damages because of Velez's breach of the Retirement Agreement.

51. Schmidt has also suffered damages from lost profits associated with the investment income Schmidt would have received had Velez timely paid him the sums due and owing under the Retirement Agreement.

WHEREFORE, Schmidt respectfully requests the Court to enter a judgment against Velez: (a) awarding Schmidt his damages in the amount Velez owes Schmidt under the Retirement Agreement, plus fees and costs; (b) ordering Velez to remove Schmidt as a guarantor of the TD Bank Note; and (c) awarding such additional relief as this Court deems fair and equitable.

## COUNT II
## UNJUST ENRICHMENT
### *Against Velez*

52. Plaintiff realleges and incorporates the allegations contained in

paragraphs 1 through 45 above as if herein fully set forth.

53. Alternatively, Schmidt conferred a benefit upon Velez by turning over his ownership interest in OQSIE to Velez.

54. Velez had knowledge of the benefit.

55. Velez voluntarily accepted and retained the benefit.

56. Velez failed to provide appropriate compensation to Schmidt in exchange for his ownership interest in OQSIE.

57. It would be inequitable for Velez to retain the benefit of Schmidt's ownership interest in OQSIE without compensating Schmidt for same.

WHEREFORE, Schmidt respectfully requests the Court to enter a judgment against Velez: (a) awarding Schmidt his damages, plus fees and costs; and (b) awarding such additional relief as this Court deems fair and equitable.

## COUNT III
## BREACH OF THE COLLABORATION AGREEMENT
### *Against OQSIE*

58. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 45 above as if herein fully set forth.

59. The Collaboration Agreement is a valid and binding contract.

60. OQSIE breached the Collaboration Agreement by failing to pay Schmidt as required therein.

61. Schmidt has suffered damages because of OQSIE's breach of the Collaboration Agreement.

62. Schmidt has also suffered damages from lost profits associated with the investment income Schmidt would have received had OQSIE timely paid him the

sums due and owing under the Collaboration Agreement.

WHEREFORE, Schmidt respectfully requests the Court to enter a judgment against OQSIE: (a) awarding Schmidt his damages in the amount OQSIE owes Schmidt under the Collaboration Agreement, plus fees and costs; and (b) awarding such additional relief as this Court deems fair and equitable.

## COUNT IV
## BREACH OF THE OPERATING AGREEMENT
### *Against OQSIE*

63. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 45 above as if herein fully set forth.

64. The Operating Agreement is a valid and binding contract.

65. Pursuant to the Operating Agreement, Schmidt is "entitled to reimbursement of expenses reasonably incurred on behalf of [OQSIE] at such time as [OQSIE] has sufficient available Cash Flow."

66. OQSIE has sufficient cash flow to repay Schmidt the loans that he has made to OQSIE.

67. OQSIE breached the Operating Agreement by failing to reimburse Schmidt for loans he made to OQSIE.

68. Schmidt has suffered damages because of OQSIE's breach of the Operating Agreement.

69. Schmidt has also suffered damages from lost profits associated with the investment income Schmidt would have received had OQSIE timely paid him the sums due and owing under the Operating Agreement.

WHEREFORE, Schmidt respectfully requests the Court to enter a judgment

against OQSIE: (a) awarding Schmidt his damages in the amount OQSIE owes Schmidt under the Operating Agreement, plus fees and costs; and (b) awarding such additional relief as this Court deems fair and equitable.

### COUNT V
### UNJUST ENRICHMENT
*Against OQSIE*

70. Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 45 above as if herein fully set forth.

71. Alternatively, Schmidt conferred a benefit upon OQSIE by generating significant business for OQSIE.

72. In addition, Schmidt conferred a benefit upon OQSIE by providing OQSIE money so that it could make timely and complete contributions to the Cash Balance Plan.

73. OQSIE had knowledge of these benefits.

74. OQSIE voluntarily accepted and retained these benefits.

75. OQSIE failed to remunerate Schmidt for the business Schmidt generated for OQSIE.

76. OQSIE failed to reimburse Schmidt for the money Schmidt provided to OQSIE so that OQSIE could make timely and complete contributions to the Cash Balance Plan.

WHEREFORE, Schmidt respectfully requests the Court to enter a judgment against Velez: (a) awarding Schmidt his damages, plus fees and costs; and (b) awarding such additional relief as this Court deems fair and equitable.

Dated: August 12, 2021

                                    Respectfully Submitted,

                                    */s/ David A. Meek II*

**David A. Meek II, ESQ. 59314**
Primary Email: dmeek@losey.law
Secondary Email: docketing@losey.law
**Robert Rubin, Esq. 113393**
Primary Email: rrubin@losey.law
Secondary Email: docketing@losey.law
**LOSEY PLLC**
1420 Edgewater Drive
Orlando, Florida 32804
Phone: 407.906.1605
Lead Trial Counsel
*Counsel for Plaintiff*